**DAMIEN JAMES, Plaintiff**

v.

**KIRK FITZPATRICK, Defendant**

Civil No. 885/1989

Territorial Court of the Virgin Islands

Div. of St. Croix

October 30, 1990

EDGAR D. ROSS, ESQ. (ROSS & CANNON), St. Croix, V.I., *for plaintiff*

ALLAN A. CHRISTIAN, ESQ., St. Croix, V.I., *for defendant*

ELTMAN, *Judge*

## MEMORANDUM OPINION

Following a jury award against him of $16,000.00, the defendant, Kirk Fitzpatrick, has timely moved for judgment notwithstanding the verdict or, alternatively, for remittitur or new trial. Fed. R. Civ. Proc. 50(b) and 59(a). Because the remittitur argument is the more provocative, it will be discussed first.

## FACTS

This case arises out of an automobile collision on July 25, 1989. The plaintiff, Damien James, was a passenger in the front seat of a vehicle driven by Alfred Roach and traveling west on the Queen Mary Highway. The defendant's car, failing to yield the right of way, proceeded out onto the highway from the Estate Carlton Road and struck Roach's car. James was thrown against the dashboard and windshield and sustained a gash in his neck deep enough to include a cut artery. The resulting major bleeding required surgery to staunch it. The plaintiff was hospitalized overnight and then confined to bed at his home for about a week. James also complained of discomfort in his shoulder, and he was treated by Dr. Claudius Henry. In addition, James' scheduled entry into the military was delayed for several months on account of his injuries. Fitzpatrick was cited for negligent driving and was convicted after appearing pro se in traffic court. This tort action followed.

A telephonic pretrial conference the week before trial established that counsel for both sides had made little effort to settle the case.

The plaintiff was off-island and reportedly unavailable to his lawyer; the defendant had made a desultory offer to settle for what his lawyer described as the nuisance value sum of $2,500.00.

On September 17, 1990, the morning of jury selection, the parties were far apart. During an in-chambers conference, the plaintiff offered to settle his claim for $10,000.00; the defendant rejected that demand and renewed his $2,500.00 counter-offer, which likewise was rejected. The jury panel was seated and jury selection was about to begin. Defense counsel requested a sidebar and informed the Court that his client was then willing to pay the $10,000.00 demand. Plaintiff's counsel thereupon consulted with his client, who rejected the proposal. James made a new demand of $15,000.00, which was rejected by the defendant. The jury ultimately awarded James $16,000.00.

## DISCUSSION

### I. *Motion for Remittitur*

While he does not attack the reasonableness of the verdict as such, Fitzpatrick seeks remittitur of the $16,000.00 verdict to $10,000.00, the amount for which he asserts the case was settled just before trial. Fitzpatrick does not request specific enforcement of the alleged settlement agreement, but the relief he does seek would effectively be the same, except that the plaintiff would have the option between accepting the remitted amount or submitting to a new trial. The plaintiff has cited no authority for the granting of remittitur to enforce a purported settlement, and the Court is unaware of any such precedent. Even assuming, however, that such relief is proper in theory, it would be inappropriate in this case.

 As is well-known and often stated, courts favor compromises and settlements, which have the double benefit of expediting payment to the victim and reducing the burden and expense of litigation. Castillo v. Roger Const. Co., 560 F.2d 1146 (3d Cir. 1977); Slaughter v. Pennsylvania X-Ray Corp., 638 F.2d 639, 643 (3d Cir. 1981). A true settlement agreement is a contract which is binding and enforceable, whether or not made in the presence of the court or even reduced to writing. Green v. John H. Lewis & Co., 436 F.2d 389 (3d Cir. 1970); Cooper-Jarrett, Inc. v. Central Transport, Inc., 726 F.2d 93, 96 (3d Cir. 1984). Voluntary settlements are broadly interpreted. Pennwalt Corp. v. Plough, 676 F.2d 77 (3d Cir. 1982), and the law does not require any sacrosanct form in order that a compromise

be effective. Morrow v. American Bank & Trust Co., 397 F. Supp. 803 (M.D.La. 1975), reh'g denied, 547 F.2d 309 (5th Cir. 1977).

■ It is fundamental, however, that a contract is not created where there is not a meeting of the minds. Restatement (Second) of Contracts, § 17 (1981). For a settlement agreement to be binding, there must be mutual assent to the essential terms and conditions. Pugh v. Super Fresh Food Markets, Inc., 640 F. Supp. 1306 (E.D. Pa. 1986).

■ Here, just prior to jury selection, the plaintiff offered to settle the case for $10,000.00. The defendant rejected the offer, and the offer was thereby extinguished. Tradeways, Inc. v. Chrysler Corp., 342 F.2d 350, 354 (2d Cir. 1965), cert. denied, 382 U.S. 832, 86 S.Ct. 71; Restatement (Second) of Contracts, § 38(1) (1981).[1] The defendant's counter-offer of $2,500.00 did not change the result, since it operated in itself as a rejection of the original offer. Edward Klein Truck and Heavy Equipment Co., Inc. v. Pitman Mfg. Co., 512 F. Supp. 101 (D.C.Pa. 1981); Restatement (Second) of Contracts, § 39(2) (1981).[2] Thus, by the time Fitzpatrick decided to pay James what he demanded, i.e., $10,000.00, the offer was no longer "on the table", even though only minutes had passed between the defendant's rejection of the offer and his subsequent attempt to accept it.

In the recess following the selection of the jury, and just before opening arguments, the Court again encouraged settlement. It became apparent, however, that an earlier compromise actually had not been quite so close, because there was no agreement on the terms of payment. Fitzpatrick stated that he could not pay $10,000.00 all at once and that the best he could do would be to assign to James the accounts receivable of his business. The plaintiff, on his part, evidently had not agreed to that plan.

■ ■ A court may read in a reasonable period of time for payment where the agreement is not specific on that detail. Pyle v. Wolf Corp., 354 F. Supp. 346 (D.C.Or. 1972); Walther and Cie v. U.S. Fidel-

---

[1] Restatement (Second) of Contracts § 38: Rejection

(1) An offeree's power of acceptance is terminated by his rejection of the offer, unless the offeror has manifested a contrary intention.

[2] Restatement (Second) of Contracts § 39: Counter-offers

(2) An offeree's power of acceptance is terminated by his making of a counter-offer, unless the offeror has manifested a contrary intention or unless the counter-offer manifests a contrary intention of the offeree.

ity & Guaranty Co., 397 F. Supp. 937 (D.C.Pa. 1975). However, much more than merely the time of payment was unspecified here; the actual manner and means of payment was still unresolved. A settlement will not be thrust upon the parties where no settlement was intended and where no mutual assent necessary to support an enforceable contract was manifested. U.S. v. Katy Independent School Dist., 333 F. Supp. 1325 (D.C.Tex. 1971).

II. *Motion for Judgment N.O.V.*

The defendant's motion for judgment notwithstanding the verdict is based on the absence of proof of a precise point of impact. Thus, Fitzpatrick contends, the jury was required to speculate or guess as to a material fact upon which liability rests.

■ In considering a motion for judgment notwithstanding the verdict, the trial court must determine whether the record contains "the minimum quantum amount of evidence from which a jury might reasonably afford relief." Smollett v. Skayting Development Corp., 793 F.2d 547, 548 (3d Cir. 1987); Pettite v. Bodkin Development Corp., 23 V.I. 254 (D.C.V.I. 1987). The evidence must be viewed in the light most favorable to the plaintiff, who receives the benefit of every fair and reasonable inference. Fireman's Fund Ins. Co. v. Vide Freeze Corp., 540 F.2d 1171, 1178 (3d Cir. 1976), cert. denied, 429 U.S. 1053 (1977); Brown v. McBro Planning & Dev. Co., 23 V.I. 242, 245 (D.C.V.I. 1987).

■ The evidence in this case was simple, and the defense called no witnesses. Roach's car had the right of way, and Fitzpatrick was entering the highway from a secondary road. There is nothing to suggest that the impact took place anywhere other than on the highway. Even if the cars had collided somewhere off the road, the uncontradicted evidence would still point to the defendant's liability on account of his failure to yield the right of way. Moreover, the jury might well have disregarded the physical evidence and found Fitzpatrick liable solely on the basis of his previous conviction, after trial, of negligent driving. Whatever the basis for their decision, the jury arrived at its decision without the need to guess or speculate as to any material issue.

Accordingly, the defendant's motion for judgment n.o.v. or alternatively for remittitur or new trial will be denied.

## ORDER

In accordance with the memorandum opinion of even date, it is hereby

ORDERED that the defendant's motion for judgment notwithstanding the verdict is denied; and it is further

ORDERED that the defendant's motion for amendment of the judgment or, alternatively, for a new trial is denied.