# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 22, 2010        Decided August 6, 2010

No. 09-7079

MBI GROUP, INC. AND ATLANTIC GROUP, SCI,
APPELLANTS

v.

CREDIT FONCIER DU CAMEROUN AND GOVERNMENT OF THE
REPUBLIC OF CAMEROON,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cv-00637-JDB)

*Philip M. Musolino* argued the cause for appellants. With
him on the briefs was *Sylvia J. Rolinski. Danielle E. Musolino*
entered an appearance.

*Knox Bemis* argued the cause and filed the brief for
appellees.

Before: GINSBURG, TATEL and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: When a purported deal to develop affordable housing in Cameroon fell apart, MBI Group, Inc., and Atlantic Group, SCI, sued the government of Cameroon and a state-owned mortgage finance corporation, Crédit Foncier du Cameroun. Concluding it would be more appropriate for this case to be heard in Cameroon, the district court dismissed the suit on the ground of forum non conveniens. Plaintiffs appeal the dismissal as well as the district court's denial of their motion for reconsideration, and we affirm.

**I.**

In 2007, MBI Group, a Delaware corporation, and Atlantic Group, MBI's Cameroonian affiliate, brought suit in the district court seeking damages from Crédit Foncier du Cameroun (CFC) and the government of Cameroon for breach of contract and various commercial torts. Plaintiffs allege they had an agreement with CFC to construct low-cost housing in Cameroon, but that government officials there quashed the project when Roger Tchoufa, MBI's representative in Cameroon, rebuffed their demands for bribes. According to defendants, the project was only an illegal ploy to enable self-dealing by a crooked official of CFC.

The district court decided that the Cameroonian courts were better suited to sort out what actually happened, and, on June 10, 2008, granted defendants' motion for a forum non conveniens dismissal. *MBI Group, Inc. v. Credit Foncier du Cameroun (MBI I)*, 558 F. Supp. 2d 21 (D.D.C. 2008). "[I]n an abundance of caution and to avoid any potential undue prejudice to plaintiffs," the court conditioned the dismissal "on the Cameroonian courts' acceptance of the case." *Id.* at 31.

Plaintiffs moved for reconsideration of the dismissal two weeks later, styling their motion both as one to alter or amend a

judgment under Federal Rule of Civil Procedure 59(e) and as a one for relief from a final judgment under Rule 60(b). Their primary contention was that they could not possibly make the prohibitively steep deposit required for a court in Cameroon to consider their case. Unwilling to accept plaintiffs' claims about the deposit, the district court dismissed their motion for reconsideration without prejudice pending a ruling from a Cameroonian court specifying what that nation's law required. *See MBI Group, Inc. v. Credit Foncier du Cameroun (MBI II)*, No. 07-0637, slip op. at 1–2 (D.D.C. Mar. 23, 2009).

After the court in Cameroon dismissed their suit, plaintiffs renewed their motion for reconsideration in the district court, which was denied on June 23, 2009. The district court concluded that the ruling of the Cameroonian court did not support plaintiffs' claims about the deposit, and that plaintiffs offered no other ground for overturning the dismissal. *See MBI Group, Inc. v. Credit Foncier du Cameroun (MBI III)*, 627 F. Supp. 2d 35, 38–41 (D.D.C. 2009).

Plaintiffs noticed an appeal. There is some confusion as to whether that appeal is limited to the June 23, 2009 order denying reconsideration or includes the June 10, 2008 order dismissing their suit as well. *Compare* Notice of Appeal, *MBI Group, Inc. v. Credit Foncier du Cameroun*, No. 07-0637 (D.D.C. July 22, 2009) (indicating an intent to appeal both rulings), *with* Appellants' Br. at i (listing the district court's denial of reconsideration as the only ruling under review). Little turns on this. Two of the three arguments plaintiffs press before us involve events occurring after the dismissal of their suit in the district court, and thus implicate only their request for reconsideration. To the limited extent the original dismissal is concerned, defendants have had the opportunity to respond to plaintiffs' arguments and suffer no prejudice by our consideration of that ruling. We therefore proceed under the

assumption that plaintiffs properly appealed both the denial of reconsideration and the underlying dismissal.

We have jurisdiction to review these rulings under 28 U.S.C. § 1291 (2006). *See Ciralsky v. CIA*, 355 F.3d 661, 668 (D.C. Cir. 2004) (dismissal order and denial of a Rule 59(e) motion); *Servants of Paraclete v. Does*, 204 F.3d 1005, 1008 (10th Cir. 2000) (denial of a Rule 60(b) motion). We review the forum non conveniens dismissal as well as the denial of relief under Rules 59(e) and 60(b) for abuse of discretion. *See Agudas Chasidei Chabad v. Russian Fed'n*, 528 F.3d 934, 950 (D.C. Cir. 2008) (forum non conveniens dismissal); *Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam) (denial of a Rule 59(e) motion); *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1138 (D.C. Cir. 1988) (denial of a Rule 60(b) motion).

## II.

There is a "substantial presumption" in favor of a plaintiff's chosen forum. *Agudas Chasidei Chabad*, 528 F.3d at 950. A court may nonetheless dismiss a suit for forum non conveniens if the defendant shows there is an alternative forum that is both available and adequate and, upon a weighing of public and private interests, the strongly preferred location for the litigation. *Id.* In this case, the district court found a viable forum in Cameroon and rejected plaintiffs' concerns that they would be incapable of getting a fair trial there. *MBI I*, 558 F. Supp. 2d at 28–32. Weighing the private and public interests, the court concluded that the scale tipped heavily in favor of adjudication in Cameroon. *Id.* at 32–36.

As noted above, two issues plaintiffs raise on appeal concern only their motion for reconsideration. They argue that, upon reconsideration, the district court should have (1) determined that an exorbitant court deposit effectively

blocked the prosecution of their suit in Cameroon and (2) concluded that Cameroon was an inadequate forum in light of the default convictions Roger Tchoufa and his wife sustained there. Plaintiffs' final contention is that the public and private interests favored trial in the United States. We consider each argument in turn.

## A.

After the district court conditionally dismissed this suit, plaintiffs sued defendants in Cameroon. Upon the filing of that action, the court clerk requested a deposit of roughly five percent of the judgment sought. Because plaintiffs' complaint claimed $500 million in damages, the bill approached $25 million. Seeking reconsideration in the district court, plaintiffs argued that they could not pursue their claims in Cameroon on account of this prohibitively expensive deposit. They claimed that the subsequent dismissal of their Cameroonian suit definitively established that the deposit was unavoidable and, as such, an insurmountable obstacle to satisfaction of the district court's condition that the Cameroonian courts accept their case.

The district court determined that plaintiffs—and not a deposit requirement—were the real obstacle to the success of their Cameroonian suit because they "at every step of the way impeded the Cameroonian courts' ability to consider their case." *MBI III*, 627 F. Supp. 2d at 38. On appeal, plaintiffs contend the district court should have concluded that the courts in Cameroon, by demanding an exorbitant filing fee, were effectively unavailable to them.

The district court was within its discretion in denying reconsideration if in fact plaintiffs sabotaged their own suit. *See In re Bridgestone/Firestone, Inc.*, 420 F.3d 702, 707 (7th Cir. 2005) (explaining that if the "plaintiffs did not act in good

faith and manipulated the dismissal of their case in Mexico, the district court should regard itself as free once again to dismiss this complaint"). A conditional forum non conveniens dismissal protects a plaintiff against the possibility that the foreign forum will not hear his case. It does not give the plaintiff license to deliberately prevent his suit in the foreign court from going forward in order to render an alternative forum defective. The only question we face, then, is whether the district court abused its discretion in concluding that "the blame for plaintiffs' case being dismissed by the Cameroonian court must be placed on plaintiffs themselves." *MBI III*, 627 F. Supp. 2d at 40. We find no abuse of discretion in this conclusion.

To begin with, the district court reasonably determined that potential alternatives to making the $25 million deposit were available to plaintiffs. *See id.* Although plaintiffs' legal experts said the deposit was unavoidable, defendants vigorously disagreed. They submitted that all but about $140 of the $25 million deposit reflected a tax that plaintiffs would owe only if they recovered the amount sought. Defendants' experts identified at least three ways by which plaintiffs could avoid this payment: they could omit the amount sought from their complaint, obtain a deferral of the payment until the entry of judgment, or seek judicial review of the amount requested on the theory that no tax payment is required in a suit against the government and a government corporation. Defendants even secured successive hearings in a Cameroonian court to argue for a lower deposit. Plaintiffs failed to appear.

In light of these alternatives, the district court instructed plaintiffs to pursue ways of "reducing, waiving, or at least postponing the deposit." *MBI Group v. Credit Foncier du Cameroun*, No. 07-0637, slip op. at 3 (D.D.C. Oct. 20, 2008). In particular, the court warned plaintiffs they could not

"ignore" the opportunity to contest the deposit amount and then expect the court to find the Cameroonian forum unavailable. *Id*. at 2.

Chided by the district court, plaintiffs finally appeared in the Cameroonian proceedings. But once there, they argued that the amount of the deposit could not be altered. They also highlighted a second procedural defect in their case: they had failed to return the original copy of the summons for their lawsuit, which is a threshold requirement to bring an action in Cameroon. They even objected to the proceedings altogether, arguing it was their exclusive right to seek a hearing on the deposit, and that defendants could not request one on their behalf. For their part, defendants argued that no tax payment was needed in a suit against the state and a state-owned entity.

The Cameroonian court issued an opinion declaring plaintiffs' suit "inadmissible for failure to make a deposit and to file the original of the summons." J.A. 355 (MBI Group, Inc. v. Crédit Foncier du Cameroun, S.A., Civil Judgment No. 29, Higher Court of Yaoundé (Mar. 31, 2009) (translation at 44)). Plaintiffs claimed victory, arguing that the Cameroonian court had adopted their position that the $25 million deposit was obligatory, thereby making the prosecution of their claim in Cameroon infeasible.

The district court disagreed. It determined that the dismissal was effectively for failure to prosecute. *See MBI III*, 627 F. Supp. 2d at 39. In the court's view, plaintiffs chose not to satisfy the threshold procedural requirements to suit in Cameroon—paying a deposit and returning the summons. They also chose not to seek relief from those requirements. What's more, they essentially asked that their procedural defaults be enforced against them. *See id.* The district court found no reason to suppose that a Cameroonian court, any

more than an American one, would compel plaintiffs to pursue advantageous procedural alternatives they consciously eschewed. *See id.* ("[A]lthough U.S. courts permit filing fees to be reduced for plaintiffs without adequate financial means, a U.S. court cannot require a plaintiff to file the application needed for *in forma pauperis* status."). The district court concluded that the possibility of success was not so remote "as to excuse plaintiffs' duty to proceed in good faith in Cameroon in an attempt to reduce the clerk's initial determination of a $25 million deposit." *Id.* at 40. Accordingly, the district court adhered to its prior determination that the Cameroonian courts offered an available alternative forum.

Plaintiffs maintain the district court abused its discretion because the decision of the court in Cameroon, properly understood, established that the $25 million deposit was mandatory. We disagree. The Cameroonian ruling did not address defendants' arguments concerning the deposit. Perhaps, as plaintiffs contend, this omission amounts to an implicit rejection of defendants' position that the deposit amount was set in error. But this silence could just as easily reflect acceptance of plaintiffs' argument that the court should not permit defendants to challenge the deposit on plaintiffs' behalf. Or it could reflect a position defendants have advanced: that without the return of the summons, the court could not adjudicate the deposit amount. Had plaintiffs argued for a reduction in or deferral of the deposit or had they returned the summons, we might know whether the deposit was the insuperable hurdle they make it out to be. But plaintiffs took none of these courses, and we remain in the dark.

Though plaintiffs bristle at the notion that their actions suggest bad faith, we fail to see how they could be characterized otherwise. The district court specifically instructed plaintiffs to seize the opportunity to be heard on the

deposit issue and pursue the alternatives defendants had identified. Plaintiffs did just the opposite. The bottom line is simple: plaintiffs consistently worked to undermine their suit in Cameroon, and the district court did not abuse its discretion in concluding that their efforts succeeded.

**B.**

An alternative forum is inadequate if the plaintiff will be "treated unfairly" there. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981); *see, e.g.*, *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1179 (9th Cir. 2006) (noting that the prevalence of corruption, delay or bias may render a forum inadequate). Plaintiffs argue that the district court should have granted reconsideration in light of new evidence strengthening their previously unsuccessful claim that Cameroon was an inadequate forum because plaintiffs could not receive a fair trial there. We do not reach the merits of this argument because plaintiffs failed to preserve it below.

In opposing defendants' motion to dismiss, plaintiffs argued that they would not be treated fairly in a Cameroonian court. The problem lay in the supposed desire of the Cameroonian executive to retaliate against plaintiffs for Roger Tchoufa going public with the bribery demands made of MBI. This animus drove an alleged campaign of harassment against Tchoufa that included prosecuting him and his wife for their purported role in the corruption at CFC. Plaintiffs maintained that the executive would be able to further its vendetta by ordaining an adverse result against them in the courts. In granting defendants' motion to dismiss, the district court rejected this argument because plaintiffs produced insufficient evidence to rebut defendants' showing that the judiciary in Cameroon was independent from executive influence. *MBI I*, 558 F. Supp. 2d at 29–30.

In their first motion for reconsideration, filed on June 24, 2008, plaintiffs did not contest the district court's conclusion that the courts in Cameroon were independent. Then, on July 11, 2008, a Cameroonian court convicted Tchoufa and his wife in absentia on what plaintiffs claim were bogus charges of misappropriating public funds. In their reply to defendants' opposition to their motion, plaintiffs pointed to the convictions as new evidence of the inability of Cameroon's judiciary to withstand executive pressure.

The district court, without addressing the convictions or any other issue plaintiffs raised, dismissed plaintiffs' motion without prejudice pending the result of the Cameroonian proceeding on the deposit issue. *MBI II*, slip op. at 2. This left plaintiffs free to raise in a renewed motion for reconsideration their previous arguments in favor of vacating the dismissal of their suit.

Plaintiffs filed that renewed motion on April 20, 2009, but it said nothing of the Tchoufas' convictions. Indeed, they raised no argument at all about the independence of the Cameroonian judiciary. They argued instead that the district court should vacate the dismissal on account of the prohibitive court deposit or, "[i]n the alternative," because of its allegedly erroneous conclusions concerning the public interests implicated by this suit, as well as "the impact of the unavailability of MBI's representative [Tchoufa] in Cameroon." Memo. in Support of Pls. Renewed Mot. for Reconsideration at 2. This last point did not address any shortcoming in Cameroonian justice, but stressed instead the disadvantages that would result from Tchoufa's reluctance to attend a trial in Cameroon. Only at the end of their reply to defendants' opposition to the renewed motion did plaintiffs even mention the convictions.

The district court did not address whether the convictions gave support to plaintiffs' concerns about the Cameroonian forum. Nor do we. "We root this decision in our well-established discretion not to consider claims that litigants fail to raise sufficiently below and on which district courts do not pass." *Cruz v. Am. Airlines, Inc.*, 356 F.3d 320, 329 (D.C. Cir. 2004). Though "[t]here is no bright-line rule to determine whether a matter has been properly raised" below, *Edmond v. U.S. Postal Serv. Gen. Counsel*, 949 F.2d 415, 422 (D.C. Cir. 1991), "district courts, like this court, generally deem arguments made only in reply briefs to be forfeited," *Pardo-Kronemann v. Donovan*, 601 F.3d 599, 610 (D.C. Cir. 2010). We see no reason to deviate from that principle here. "[R]eply briefs *reply* to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration." *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002).

That plaintiffs raised the convictions during the proceedings on their first reconsideration motion does not excuse their failure to present the issue in their renewed motion for reconsideration. District courts need not refer back to prior filings to identify arguments that the moving party could (and should) have addressed in the motion then under consideration. By failing to raise the issue of the convictions in their renewed motion for reconsideration, plaintiffs failed to preserve it for our review.

Because plaintiffs raise no other objection to the district court's underlying assessment of the independence of Cameroon's judicial branch, *see* Appellants' Br. at 28–30 (arguing only that the Tchoufa's convictions demonstrated that the Cameroonian judiciary lacked independence), we need not consider the merits of that decision. Nevertheless, we pause to

clarify a point of law that figured into the district court's original dismissal of the suit. Plaintiffs had introduced a State Department report that found that the judiciary in Cameroon was subject to executive influence. The district court discounted this showing, explaining that "binding authority in this jurisdiction defeats plaintiffs' reliance upon the State Department's report." *MBI I*, 558 F. Supp. 2d at 30. The authority relied upon was a passage in *El-Fadl v. Central Bank of Jordan* explaining that a "foreign forum is not inadequate . . . because of general allegations of corruption in the judicial system" and that "reliance on a State Department report expressing 'concern about the impartiality' of the [foreign] court system . . . is unavailing" to show inadequacy. 75 F.3d 668, 678 (D.C. Cir. 1996), *abrogated on other grounds by Samantar v. Yousuf*, 130 S. Ct. 2278 (2010).

*El-Fadl* does not erect a per se bar to the consideration of State Department reports in a forum non conveniens inquiry. To be sure, "general allegations" of deficiency do not alone warrant the conclusion that a foreign forum is inadequate. *Id*. But it does not follow that State Department reports are irrelevant to the inquiry. Such reports could be relevant to the extent they provide reliable information that corroborates a plaintiff's claims about the character of another nation's judiciary. However, because plaintiffs have not raised the issue for our review, we do not address whether the district court erred in discounting the State Department report proffered in this case.

## C.

In dismissing plaintiffs' suit, the district court determined that the relevant private and public interests strongly favored litigating this matter in Cameroon. *See MBI I*, 558 F. Supp. 2d at 32–36. Plaintiffs contend the district court should have given greater weight to the U.S. government's fight against foreign

corruption as a public interest weighing in favor of an American forum. The district court did not abuse its discretion in refusing to do so.

The Supreme Court laid out the interests to be considered in the forum non conveniens inquiry in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). The private interests include "ease of access to sources of proof"; "availability of compulsory process for attendance of unwilling" witnesses; "the cost of obtaining attendance of willing" witnesses; the "possibility of view of premises" by the court and jury if needed; and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 508. The public interest factors include the "local interest in having localized controversies decided at home"; the possibility of holding the trial in a forum "at home with the [] law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself"; and avoiding the imposition of jury duty on "people of a community which has no relation to the litigation" and other "administrative difficulties" that flow from foreign litigation congesting local courts. *Id.* at 508–09.

The district court concluded that the private interests clearly favored a Cameroonian forum because of the numerous hurdles to proceeding in the United States, including the cost and complexity of the French-to-English translation necessary for taking evidence and testimony, the court's inability to subpoena unwilling witnesses located in Cameroon, and the cost of producing the willing ones. *MBI I*, 558 F. Supp. 2d at 32–34. The court determined that the public interests also supported dismissal. It found the United States's interest in seeing domestic companies made whole for injuries sustained abroad outweighed by Cameroon's superior interest in a matter involving a development project and official corruption in that

country as well as the district court's unfamiliarity with Cameroonian law. *Id.* at 34–36.

Plaintiffs argue that the district court abused its discretion in ignoring the United States' interest in protecting domestic corporations, like MBI, from the corrupt practices of foreign governments, such as the bribery demands plaintiffs say scuttled their project. Plaintiffs consider this interest to be a part of the government's interest in having this controversy resolved in the United States. But they identify no case in which this purported interest in fighting foreign corruption figured into a court's forum non conveniens analysis. Even if it were an appropriate consideration, at most it would be matched against Cameroon's own significant interest in this controversy, but it would hardly disturb the district court's overall conclusion that the public and private interests strongly favored dismissal. We therefore conclude that the district court did not abuse its discretion in weighing the public and private interests.

## III.

For the foregoing reasons, the dismissal of plaintiffs' suit and the denial of their renewed motion for reconsideration are

*Affirmed.*