# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 21-3050**

**September Term, 2022**

FILED ON: DECEMBER 13, 2022

UNITED STATES OF AMERICA,
>                    APPELLEE

v.

HUMBERTO IESAJACO-DIAZ, ALSO KNOWN AS GILBER ZELAYA-DIAZ, ALSO KNOWN AS PAYASO, AGENT OF HUMBERTO IESAJACO,
>                    APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cr-00111-1)

Before: HENDERSON, *Circuit Judge*, and SENTELLE and TATEL, *Senior Circuit Judges*

## J U D G M E N T

This case was considered on the record from the United States District Court for the District of Columbia and on the briefs of the parties. *See* Fed. R. App. P. 34(a)(2); D.C. Cir. R. 34(j). The Court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the reasons stated below, it is hereby

**ORDERED** and **ADJUDGED** that the district court's order is affirmed.

Humberto Iesajaco-Diaz pleaded guilty to conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii), and 846. After recruiting an associate, Iesajaco-Diaz agreed to purchase two kilograms of cocaine from a confidential informant of the Drug Enforcement Agency, for which the district court sentenced him to 44 months imprisonment. At sentencing, the district court, Judge Bates, acknowledged and responded to several points raised by Iesajaco-Diaz. First, he noted Iesajaco-Diaz's "initial desire" to purchase a lower quantity of cocaine but explained that "[e]ven at the lower quantity . . . that's a significant quantity" and Iesajaco-Diaz was "responsible for recruiting someone to accompany him" in the purchase. Second, the court addressed the possibility of deportation, noting that Iesajaco-Diaz has "already been deported from this country on three previous occasions over the past 15 years" for similar offenses and expressing "concern[] with the cycle of deportation, return, illegal return, crime, deportation, et cetera." Though recognizing

the "difficult setting" Iesajaco-Diaz grew up in, Judge Bates nonetheless found that "a substantial period of incarceration was warranted" in part to impress upon Iesajaco-Diaz that "his prospects for remaining in the United States are not good."

Challenging his sentence, Iesajaco-Diaz argues first that his sentence was procedurally and substantively flawed because the court failed to apply U.S.S.G. § 2D1.1 Application Note 5 or to consider a departure under *United States v. Smith*, 27 F.3d 649 (D.C. Cir. 1994); and second, that his counsel provided ineffective assistance by failing to raise Note 5, a *Smith* departure, or a downward variance based on other mitigating factors.

An appeal waiver in Iesajaco-Diaz's plea agreement squarely forecloses his claims that his sentence was procedurally or substantively flawed. A "knowing, intelligent, and voluntary" appeal waiver "generally may be enforced," *United States v. Guillen*, 561 F.3d 527, 529 (D.C. Cir. 2009), and we "ordinarily dismiss an appeal falling within the scope of such a waiver," *United States v. Hunt*, 843 F.3d 1022, 1026–27 (D.C. Cir. 2016). Here, Iesajaco-Diaz does not contend that his appeal waiver was anything other than "knowing, intelligent, and voluntary." *Guillen*, 561 F.3d at 529. That waiver is clear: Iesajaco-Diaz may not "appeal the sentence in [his] case, including but not limited to any term of imprisonment . . . and the manner in which the sentence was determined." Yet that is exactly what Iesajaco-Diaz appeals here: he challenges the district court's calculation of his base offense level under U.S.S.G. § 2D1.1 and failure to grant him a *Smith* departure. These claims clearly fall within the scope of Iesajaco-Diaz's valid appeal waiver.

Iesajaco-Diaz finds no more success with his second contention that his counsel rendered ineffective assistance when he failed to raise Note 5, seek a *Smith* departure, or argue for a variance based on Iesajaco-Diaz's difficult upbringing and family circumstances.

First, Note 5 does not apply in this case. Note 5 states that in a reverse sting, if the defendant establishes that he "did not intend to [purchase] the agreed-upon quantity of the controlled substance, the court shall exclude from the offense level determination" the amount that he did not intend to purchase. U.S.S.G. § 2D1.1, Application Note 5. Iesajaco-Diaz has not established that he lacked intent to purchase the amount of cocaine used to determine his sentence—two kilograms. To the contrary, he affirmatively and repeatedly admitted that he was accountable for at least two kilograms of cocaine.

Iesajaco-Diaz's secondary argument—that "[a]t a minimum, even if the district court rejected [Note 5], there was a basis for granting a downward variance for sentencing manipulation," Appellant's Br. 15—is equally unavailing. Iesajaco-Diaz raised his initial desire to purchase a lesser amount of cocaine on several occasions: in his sentencing memorandum, in his counsel's statement at sentencing, and in his own statement at sentencing. The district court found this argument unpersuasive. As a result, even if Iesajaco-Diaz's counsel had urged a downward variance, there is no "'reasonable probability'" that "'the result of [Iesajaco-Diaz's sentencing] would have been different.'" *Smith v. Spisak*, 558 U.S. 139, 149 (2010) (quoting *Strickland v. Washington,* 466 U.S. 668, 694 (1984)).

As to his *Smith* departure claim, Iesajaco-Diaz has not demonstrated that his counsel's failure to raise the possibility of a downward departure prejudiced him because "the district court made clear that it would not have departed downward." *United States v. Brodie*, 524 F.3d 259, 272 (D.C. Cir. 2008). Although "a downward departure may be appropriate where the defendant's status as a deportable alien is likely to cause a fortuitous increase in the severity of his sentence," this departure is not automatic. *Smith*, 27 F.3d at 655. Judge Bates made clear that he was "very concerned with the cycle of deportation, return, illegal return, crime, deportation, et cetera," and that he intended his sentence to drive home that Iesajaco-Diaz's "prospects for remaining in the United States are not good." Granting a *Smith* departure would only speed up this cycle of recidivism. From this record, we have no basis for concluding that Judge Bates would be inclined to grant a *Smith* departure. *Brodie*, 524 F.3d at 272.

Finally, Iesajaco-Diaz argues that his attorney failed to raise other mitigating factors, namely his family circumstances, difficult childhood, and medical conditions. Once again, an examination of the record reveals that the district court was aware of and weighed each of these factors. We have no basis for concluding that Diaz's counsel's performance "'prejudiced [his] defense.'" *United States v. Sitzmann*, 893 F.3d 811, 831 (D.C. Cir. 2018) (quoting *Strickland*, 466 U.S. at 687.).

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after the resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:    /s/
Daniel J. Reidy
Deputy Clerk